UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

|  |  |
|---|---|
| MELISSA PEREZ | )<br>)<br>) |
| *Plaintiff,* | )<br>) |
| v. | ) Case No. 19CV1788<br>) |
| COOK COUNTY SHIERIFF'S,<br>OFFICE; COUNTY OF COOK,<br>*a local unit of government*;<br>TOM DART,<br>*in his individual as Sheriff of*<br>*Cook County,* | )<br>)<br>)<br>) JURY DEMANDED<br>)<br>) |
| *Defendants.* | )<br>)<br>) |

**COMPLAINT**

Plaintiff, Melissa Perez, by and through undersigned Counsel, alleges the following against Defendant, the Cook County Sheriff's Office, the County of Cook, and Tom Dart, Sheriff:

**I.    NATURE OF THE CLAIMS**

This is an action brought to remedy discrimination in employment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1983, the Illinois Human Rights Act, 775 ILCS 5/2 *et seq.* ("IHRA"), *and* the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.* Plaintiff seeks declaratory and injunctive relief and other compensatory and equitable make-whole relief both to secure future protection and to redress the past deprivation of the rights promised to her under federal and state law.

Plaintiff is employed by the Defendant ("Sheriff's Office") and works as a correctional officer for the Sheriff's Office. Plaintiff has been sexually harassed and intimidated by her superior.

1

The Cook County Sheriff's Office as a pattern or practice, has allowed sexual harassment, gender discrimination and retaliation to be pervasive throughout its facilities. This conduct has caused Plaintiff to go to work in fear. Plaintiff seeks redress from the Sheriff's Office illegal conduct, including the implementation of proper sexual harassment training and the enforcement of a zero-tolerance policy against workplace violence and sexual harassment so they may continue their careers at Sheriff's Department and prevent other females from experiencing this trauma.

## II.   JURISDICTION AND VENUE

1.    This Court has jurisdiction over Plaintiff' federal claims pursuant 42 U.S.C. § 2000e-5(f)(3) (Title VII), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1443 (civil rights).

2.    This Court has supplemental jurisdiction over Plaintiff' state law claims, pursuant to 42 U.S.C. § 1367.

3.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

## III.   PARTIES

### a. Plaintiff

4.    Plaintiff is a female correctional officer with the Sheriff's Department. She has worked for the Defendant since 2005.

5.    Plaintiff has met all administrative prerequisites for filing suit under Title VII, 42 U.S.C. § 2000e. On August 7, 2018, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") of discrimination including hostile work environment, disparate treatment, retaliation, pattern and practice based on gender discrimination under Title VII and the Illinois Human Rights Act. On December 21, 2018, the Department of Justice ("DOJ") issued Right to Sue letters. A copy of the charges (Exhibit 1) and the Right to Sue letters (Exhibit 2) are attached to this

Complaint. Plaintiff has filed this complaint within 90 days of her receipt of notice of her right to sue from the DOJ.

6. At all times relevant to this Complaint, Plaintiff has been an employee as defined by Title VII and the IHRA. 42 U.S.C. § 2000e(f); 775 ILCS 5/2-101(A). At all times, Plaintiff was eligible for the protections of FMLA. She worked over 12 months and for at least 1250 hours during the previous 12-month period.

### b. DEFENDANTS

7. The Cook County Sheriff's Department ("Sheriff's Department") is a department of Cook County. The Sheriff's Department employs at least fifteen (15) or more employees on a continuous basis and who, by virtue of its employment as a municipal corporation, is considered to be a state official or state actor. The Sheriff's Office is and was at all times relevant to the Complaint Plaintiff's "employer" as defined by Title VII and the IHRA. 42 U.S.C. § 2000e(b); 775 ILCS 5/2-101(B). Defendant is an employer within the meaning of the FMLA, employing more than 50 employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year in an industry affecting commerce.

8. The County of Cook is a Defendant in this matter solely in its capacity as an indemnitor for any claims brought against the Cook County Sheriff's Office. Cook County was created on January 15, 1831 by an act of the Illinois General Assembly. It is a municipal unit of government that employs at least fifteen (15) or more employees on a continuous basis and who, by virtue of its employment as a municipal corporation, is considered to be a state official or state actor. Cook County is and was at all times relevant to the Complaint Plaintiff's "employer" as defined by Title VII and the IHRA. 42 U.S.C. § 2000e(b); 775 ILCS 5/2-101(B).

9. At all relevant times, Defendant Sheriff Tom Dart served in the elected position of Sheriff of Cook County, Illinois. Sheriff Dart is sued in his individual capacity. Sheriff Dart has final policy-

making authority with regard to conduct alleged herein. *See Hernandez v. Cook Cnty. Sherriff's Office*, No. 13C 7949, 2014 U.S. Dist. LEXIS 45956, 2014 WL 1339686, at 3 (N.D. Ill. Apr. 3, 2014).

### IV. FACTUAL ALLEGATIONS & CLAIMS FOR RELIEF

The following constitutes charges of discrimination against the Cook County Sheriff's Office. The causes of action included in this document:

### FACTUAL ALLEGATIONS

10. Plaintiff incorporates Paragraphs 1 – 9 as if fully set forth herein.

11. Plaintiff has been a correctional officer with the Sheriff's Department since 2005.

12. For nearly 10 years, until 2014, Plaintiff was posted at Cook County Jail ("the Jail").

13. In 2014, Plaintiff transferred to Remote Booking where she worked until April 27, 2018 when Plaintiff was transferred back to the Jail.

14. At Remote Booking, Plaintiff's shift time was 7 am to 3 pm until she returned from disability leave in the summer of 2017 when her shift time changed to 9 am to 5 pm.

15. For the length of her tenure at Remote Booking, Plaintiff's immediate supervisor was Lieutenant Charles Luna.

16. In February 2016, Plaintiff's husband Noel Perez, also a Cook County Sheriff's Office employee, was diagnosed with a rare form of cancer.

17. To date, he continues to battle this disease.

18. In March 2016, Plaintiff was approved for intermittent FMLA leave to care for her husband.

19. Upon receipt of Plaintiff's FMLA approval, Lt. Luna called her to tell her that she could not utilize FMLA leave as long as she was assigned to Remote Booking.

20. Luna told Plaintiff that she would have to transfer back to the Jail in order to utilize her approved FMLA.

21. As a result of this call, Plaintiff was afraid to use her approved FMLA.

22. So, when Plaintiff started to take days off to care for her husband, she requested to use a PTO day.

23. In March 2016, Lt. Luna began to sexually harass Plaintiff.

24. The first incident occurred when Lt. Luna told Plaintiff that if she needed to relieve stress, that she could call Luna because Plaintiff's husband is going to "need time off."

25. Plaintiff took Lt. Luna's comment to mean that he wanted have sex with her while her husband could not due to his illness. Lt. Luna had propositioned her for sex.

26. Plaintiff was offended and disgusted, and rebuffed Lt. Luna's comment.

27. These statements would only get worse with time.

28. During the call, Lt. Luna said to Plaintiff, "Noel is not going to be able to get it up so if you need help, I could help you out. You can come and see me."

29. Plaintiff again took this to mean a proposition for sex.

30. Plaintiff was shocked and immediately hung up the phone.

31. During a benefit party for Noel in August 2016, Lt. Luna informed Plaintiff that a Remote Booking position was about to open up at the 111th St. location.

32. Since Plaintiff lives in Indiana, this site was far closer to her home, compared to where Plaintiff was currently stationed at the Harrison location.

33. Because of the location and since Plaintiff had seniority within her group, Lt. Luna said that he would offer Plaintiff this position when it opened up.

34. In August 2016, Plaintiff submitted a pink slip for time off to Lt. Luna to request September 12, 13 and 14 off to care for her husband.

5

35. By September 8, 2016, Plaintiff had not heard back from Lt. Luna and so Plaintiff sent him an email to inquire about his approval. He emailed her back that he was trying to find coverage for those days.

36. Plaintiff did not hear from Lt. Luna until she texted him on September 11, 2016 to remind him that she was taking the next three days off.

37. Lt. Luna responded that Plaintiff's absences were not approved, and she needed to show up to work, "or else." Plaintiff asked what he meant by "or else." Lt. Luna told her that she would be transferred back to the jail as punishment.

38. As a result, Plaintiff called Union Chief Steward Mark Robinson. He told her that Plaintiff had been approved for FMLA and she should use her approved time.

39. Plaintiff told Mr. Robinson that she feared for her job if she disobeyed Lt. Luna.

40. Mr. Robinson told Plaintiff to politely text Lt. Luna that she would be taking FMLA approved time off.

41. Plaintiff did. Lt. Luna never responded to her text.

42. In October 2016, Plaintiff found out that the position at 111th St. was now open. Plaintiff reached out to Lt. Luna to ask if she was to be transferred to the new location.

43. He told her that she would not be transferred there. Plaintiff asked, "Why?"

44. Lt. Luna said, "You chose your family over your job and called in FMLA in September so you are not getting the spot. I was going to send you back to the jail but Superintendent Queen told me to be sympathetic towards your situation."

45. In November 2016, Plaintiff submitted pink slips for a few days off to care for her husband.

46. Again, Lt. Luna did not tell Plaintiff if she was approved or denied. So, Plaintiff contacted Superintendent Giunta to seek approval.

6

47. In that conversation Plaintiff explained the hardship she was having with Lt. Luna. Sup. Giunta said, "Perez, why don't you come back to the jail. I am your superintendent and I will take care of you and approve any day off you want."

48. Plaintiff responded, "No, why? What did *I* do wrong? I feel like I am being punished because my husband is sick."

49. Supt. Giunta quickly stated to Plaintiff, "I will approve your days" and ended the conversation.

50. In December 2016, Plaintiff received a pink slip back that said she was approved for a personal day back on September 12th. Plaintiff called the timekeeper Barbara Anderson because she had used FMLA time for those days. Ms. Anderson said she was confused why Plaintiff took FMLA time since she had been approved to take PTO.

51. This further showed the FMLA interference Plaintiff suffered from Lt. Luna.

52. On March 25, 2017, Plaintiff suffered a ruptured disc in her neck.

53. From April 2017 until October 2017, Plaintiff was off of work on employer-approved short-term disability.

54. In June 2017, Lt. Luna reached out to Plaintiff to ask when she would be returning to work.

55. Plaintiff returned Lt. Luna's call to tell him she was unsure about her return date due to her neck pain.

56. At the start of the call, Plaintiff put the call on speaker-mode. Plaintiff's husband, Noel heard the entirety of the conversation between Plaintiff and Lt. Luna.

57. Lt. Luna responded, "I'm going to have to take it easy on your neck. Are you still going to be able to take it deep?"

58. Plaintiff took this comment to mean that he wanted to force her to perform oral sex in a violent manner.

7

59. Plaintiff was shocked by this overt statement of sexual harassment and immediately hung up.

60. In July 2017, Plaintiff's doctor informed her that she required a hysterectomy. The surgery took place at the end of the month.

61. In September 2017, Lt. Luna again contacted Plaintiff to inquire about her return to work.

62. Plaintiff put the call on speaker-mode. Plaintiff's husband Noel heard the entirety of the conversation.

63. Plaintiff called Lt. Luna and told him that she would be back some time in October 2017 since she had recently undergone hysterectomy surgery.

64. Lt. Luna responded, "Ohh, something new to break in."

65. Plaintiff took this to mean that Lt. Luna wanted to have violent sex with her.

66. As before, Plaintiff gave no response to this disgusting comment and hung up.

67. October 11, 2017 was her first day back from short-term disability.

68. Upon her return, Plaintiff asked Lt. Luna if she would be on the 7 am to 3 pm shift at Harrison as she had been before. Lt. Luna texted her that her shift was changed to 9 am to 5 pm. Lt. Luna gave Plaintiff's old shift to her partner, Christopher Rosenhagen, who had less seniority.

69. Shortly thereafter, Plaintiff learned that her location needed a Sheriff to work a 6 am to 2 pm shift. Plaintiff called Lt. Luna to ask if he would approve her for that shift. He laughed at her when Plaintiff asked for the change.

70. Plaintiff said, "I'm not joking. I'm being serious. Don't pull my leg and lead me on."

71. Lt. Luna responded, "I've got something for you to pull."

72. Plaintiff took this to mean that he wanted her to give him a "handjob."

73. Even though he had made several sexually harassing comments by this point, Plaintiff was still shocked by it and she hung up.

8

74. On October 20, 2017, Plaintiff asked her partner, Officer Rosenhagen, if he would switch shifts with her on November 2nd and 3rd as Plaintiff had appointments at the hospital. He said he would not unless Lt. Luna approved it.

75. Plaintiff asked Lt. Luna, but he didn't respond so Plaintiff reached out to Sup. Queen. In an email to Sup. Queen, dated November 1, 2017, Plaintiff also told Queen about the FMLA interference and retaliation, Lt. Luna's decision not to give her the 111th St. position as a result of taking Plaintiff's use of FMLA and the retaliation Plaintiff had suffered since returning from FMLA-approved leave as a result of a short term disability.

76. Sup. Queen told her to call her at extension 0078. Plaintiff did so but Commander Clemmons answered the phone. Plaintiff asked to be transferred to Sup. Queen, but he transferred her to Lt. Luna.

77. Lt. Luna began to scream at Plaintiff.

78. Plaintiff told him she was going to make a complaint against him and he immediately changed his tone and also authorized her to switch shifts with her partner, Officer Rosenhagen, on November 2, 2017 and November 3, 2017.

79. In November 2017, Lt. Luna again told Plaintiff that she could not take FMLA while working in Remote Booking.

80. On April 17, 2018 Plaintiff took an FMLA approved day off. On April 24, 2018 Plaintiff requested an FMLA day off for May 4, 2018.

81. On April 27, 2018, Lt. Luna informed Plaintiff that she was being transferred back to the Jail effective immediately. Her current shift is 6 am to 2 pm Friday through Tuesday with Wednesday and Thursday off.

9

82. Working at the Jail is a significantly less desirable job assignment. Deputies come in contact with hundreds of dangerous and violent criminals each day. At remote booking, Deputies are at a lesser risk to attacks and violence. Remote booking is a sought-after position by many deputies.

83. Deputies with tenure, like the Plaintiff, fill the remote-booking position.

84. This is a significant change in her work conditions as it is a reassignment with significantly different responsibilities and lacks the personal and professional benefits of her old schedule assignment in remote booking.

85. This job reassignment is an adverse employment action due to gender discrimination/sexual harassment and FMLA interference and retaliation.

86. Lt. Luna has repeatedly sexually harassed Plaintiff as well as interfered/retaliated against her because of her FMLA approved time off.

87. This treatment has significantly affected Plaintiff's private life in the form of mental and emotional pain in the form of sleepless nights/nightmares, angel, nervousness, anxiety, paranoia, and fear of further reprisals from her superiors. Plaintiff fears showing up to her job and suffering further adverse employment actions.

## **CLAIMS FOR RELIEF AGAINST ALL DEFENDANTS**

**I.   Sexual Harassment – Hostile Work Environment under Title VII**

88. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 88.

89. Plaintiff found Lt. Luna's advances offensive and rejected them.

90. Lt. Luna's conduct was based on sex.

91. This harassment unreasonably interfered with Plaintiff's work performance by creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being.

92. This harassment was so severe or pervasive as to alter the conditions of Plaintiff's employment and create an abusive working environment.

93. This harassment was both objectively and subjectively offensive.

94. The conduct Plaintiff experienced at the hands of the Sheriff's Department constitutes a continuing violation of Title VII.

95. At all times relevant to the Complaint, Lt. Luna has had the ability to take tangible employment actions against Plaintiff *i.e.* to effect a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

96. The Defendants knew or should have known of the harassment and failed to remedy it.

### II.     Sexual Harassment – Hostile Work Environment under the IHRA

97. Plaintiff re-alleges Paragraphs 1-96 and incorporates them as though fully set forth herein as Paragraph 97.

### III.    Sexual Harassment– Quid Pro Quo Under Title VII (42 U.S.C. §§ 2000e-2)

98. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 98.

99. Plaintiff is a member of a protected group.

100. Plaintiff found Lt. Luna's sexual advances offensive and rejected them.

101. Lt. Luna's harassment of Plaintiff was sexually motivated.

11

102. Plaintiff took Lt. Luna's sexual advances and requests for sex, as well, as the retaliation from the rejection of his advances, to mean that providing sex to Lt. Luna was a term or condition of her employment.

103. Plaintiff's reaction to Lt. Luna's advances affected tangible aspects of her employment.

104. At all times relevant, Lt. Luna was acting on behalf of the Cook County Sheriff's Office.

**IV.      Sexual Harassment– Quid Pro Quo Under IHRA (775 ILCS 5/2 102(D))**

105. Plaintiff re-alleges Paragraphs 1-87 and 98-104 and incorporates them as though fully set forth herein as Paragraph 105.

**V.      Gender Discrimination (Disparate Treatment) in Violation of Title VII**

106. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 106.

107. The Defendants discriminated against Plaintiff due to her gender by subjecting her to disparate treatment and unequal terms and conditions of employment by:

   a.   Subjecting Plaintiff to a pattern or practice of hostile work environment due to sexual harassment;
   b.   By having a zero-tolerance policy of violence, but not enforcing it when it came to Plaintiff's complaints of sexual harassment and hostile work environment against males; and
   c.   Assigning Plaintiff a less desirable shift and location.

108. At all times, Plaintiff performed her job according to Defendant's legitimate expectations.

109. Defendants did not implement prompt remedial measures when notified of the employment practices violating federal and state employment laws.

110. The Defendants treated similarly situated male employees outside her protected class more favorably.

12

## VI. Gender Discrimination (Disparate Treatment) in Violation of IHRA

111. Plaintiff re-alleges Paragraphs 1-87 and 106-110 and incorporate them as though fully set forth herein as Paragraph 111.

## VII. Gender Discrimination (Pattern or Practice) in Violation of Title VII

112. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 112.

113. The Defendants discriminated against Plaintiff due to her sex (female). As a part of that pattern and practice of sex discrimination, the Defendants:

    a. Fail to maintain adequate safety for female employees;
    b. Fail to provide training to employees regarding sexual harassment;
    c. Ignore claims of sexual harassment;
    d. Promote individuals accused of sexual harassment;
    e. Fail to provide an environment free from discrimination;
    f. Fail to discipline (including terminate) males accused of sexual harassment;
    g. Fail to investigate claims of sexual harassment;
    h. Fail to place males accused of sexual harassment on paid administrative leave;
    i. Assign women who complain of sexual harassment less favorable job assignments;
    j. Subject women who complain of sexual harassment to retaliatory transfers to less desirable assignments to discourage the reporting of sexual harassment claims.

114. The policies described above are part of a pattern and practice of sex discrimination utilized by Defendants and constitute a violation of 42 U.S.C. § 2000e-2(a).

## VIII. Retaliation in Violation of Title VII

115. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 115.

116. Plaintiff complained to her superior Lt. Luna about his sexual harassment and gender discrimination.

117. Plaintiff also complained to Superintendents Giunta and Queen about Lt. Luna's threats and his decision not to approve days off for the Plaintiff.

118. As a result of those complaints, Plaintiff suffered repeated adverse employment actions.

119. These adverse employment actions *e.g.* having to endure a hostile work environment based on sexual harassment, Lt. Luna's quid pro quo sexual harassment, Lt. Luna's denials of Plaintiff's request for FMLA days, and denial of the transfer to a back to a more favorable assignment) followed Plaintiff's complaints of sexual harassment within a short period of time, thereby raising an inference of retaliatory motivation.

120. These adverse employment actions were undertaken by Defendants in retaliation for Plaintiff's complaints of sexual harassment and gender discrimination.

121. Plaintiff was treated less favorably than other similarly situated employees who did not engage in the statutorily protected activity of complaining about sexual harassment.

**IX.     Retaliation for Reporting/Opposing Sexual Harassment in Violation of IHRA (775 ILCS 5/6 - 101(A))**

122. Plaintiff re-alleges Paragraphs 1-87, 114-121 and incorporates them as though fully set forth herein as Paragraph 122.

**X.      Gender Discrimination (Pattern or Practice) in Violation of Title VII (42 U.S.C. §§ 2000e-2)**

123. Plaintiff re-alleges Paragraphs 1-87, and incorporates them as though fully set forth herein as Paragraph 123.

124. The Defendants discriminated against Plaintiff due to her sex (female). As a part of that pattern and practice, the Defendants:

   a. Fail to maintain adequate safety for female employees;
   b. Fail to provide adequate training to employees regarding sexual harassment;
   c. Ignore claims of sexual harassment;
   d. Promote individuals accused of sexual harassment;
   e. Fail to provide an environment free from discrimination;
   f. Fail to discipline (including terminate) males accused of sexual harassment;
   g. Fail to conduct a meaningful investigations of claims of sexual harassment;
   h. Fail to place males accused of sexual harassment on paid administrative leave pending the outcome of the investigation;
   i. Assign women who complain of sexual harassment less favorable job assignments;
   j. Subject women who complain of sexual harassment to retaliatory job assignments.

125. The policies described above are part of a pattern and practice of sex discrimination utilized by the Defendant, and constitute a violation of *42 U.S.C. § 2000e-2(a)*.

**XI.  Title VII *Monell* Claim, 42 U.S.C. § 1983**

126. Plaintiff re-alleges Paragraphs 1-87 and incorporates them as though fully set forth herein as Paragraph 126.

127. Under 42 U.S.C. § 1983, Plaintiff needs to prove that (1) the Defendant had an express policy that, when enforced, causes a constitutional deprivation; (2) the Defendant had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) Plaintiff's constitutional injury was caused by a person with final policymaking authority.

128. The Defendants conducted their operations under color of state law, through its officers and employees. At all times, Defendants acted as employees, supervisors, and/or final policymakers for the Cook County Sheriff's Office and its respective agencies.

15

129. The Defendants employed Lt. Luna to act in a supervisory capacity to employees of the Defendants, including Plaintiff, and at all times relevant to the Complaint, he acted under color of state law.

130. The Defendants are responsible for the acts of Lt. Luna who acted within the scope of his employment and pursuant to a policy, custom and/or pattern of sex discrimination, retaliation and violation of individual rights of equal protection under the Fourteenth Amendment to the Constitution of the United States.

131. At all times relevant to the Complaint, Plaintiff has had the right to be free from sexual harassment, gender discrimination, and retaliation for reporting such conduct.

132. The Defendants have a policy that is so permanent and well-settled as to constitute a custom or usage within the force of law of discriminating against women based on their sex.

133. As a matter of both policy and practice, the Defendants:

    a. Directly encourage, and fail to adequately discipline, supervise and control its officers, and their failure to do so manifests in deliberate indifference;

    b. Facilitate the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct. This leads male Sheriff's Office employees to believe their actions will never be scrutinized, and in that way, directly encourages future abuses such as those affecting Plaintiff. Specifically, male Sheriff's Office employees accused of misconduct can be confident that the Department will not investigate those accusations in earnest and will refuse to recommend discipline even where the officer has engaged in misconduct;

    c. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in Sheriff's Office, by which employees fail to report misconduct committed by other male officers, such as the misconduct at issue in this case;

    d. Fail to maintain adequate safety for female employees;

    e. Fail to provide adequate training to employees regarding sexual harassment;

    f. Ignore claims of sexual harassment;

    g. Promote individuals accused of sexual harassment;

    h. Fail to provide an environment free from discrimination;

    i. Fail to discipline (including terminate) males accused of sexual harassment;

    j. Fail to conduct a meaningful investigation of claims of sexual harassment;

    k.   Fail to place males accused of sexual harassment on paid administrative leave pending the outcome of the investigation;

    l.   Promote that women who complain of sexual harassment be put on paid medical leave;

    m.   Assign women who complain of sexual harassment less favorable job assignments;

    n.   Subject women who complain of sexual harassment to retaliatory discipline to discourage the reporting of sexual harassment claims.

134.    Because of this deprivation of rights to be free from sexual harassment, gender discrimination, and retaliation, Plaintiff has suffered and continues to suffer ongoing damages.

## XII.    FMLA Retaliation 29 U.S.C. § 2601 *et seq.*

135.    Plaintiff re-alleges Paragraphs 1 through 87 and incorporates them as though fully set forth herein as Paragraph 135.

136.    Plaintiff engaged in a statutorily protected activity when she took FMLA leave.

137.    Plaintiff is eligible for the protections of FMLA. *Supra*, paragraph 6.

138.    Defendant is a covered employer under the FMLA. *Supra*, paragraph 7.

139.    Plaintiff met Defendant's legitimate expectations.

140.    Plaintiff suffered a materially adverse employment action when Defendant transferred her on April 27, 2018.

141.    Plaintiff was treated less favorably than similarly situated employees who did not request FMLA leave.

142.    As a result of Defendant's willful retaliation against Plaintiff's rights under the FMLA, Plaintiff has sustained damages.

## XI.    FMLA Interference 29 U.S.C. § 2601 *et seq.*

143.    Plaintiff re-alleges Paragraphs 1 through 87 and incorporates them as though fully set forth as Paragraph 143.

144.    Plaintiff is eligible for the protections of FMLA. *Supra*, paragraph 6.

145.    Defendant is a covered employer under the FMLA. *Supra*, paragraph 7.

146. Plaintiff provided sufficient notice to Defendant of her intent to take leave when she notified her superiors both verbally and via email.

147. Plaintiff's superiors denied her FMLA-approved leave both verbally and via email.

148. Defendant willfully interfered, restrained, and denied Plaintiff her rights under 29 U.S.C. § 2611, more specifically, interfered with her right to utilize FMLA qualified leave when they:

   a. Willfully contacted her during her leave;
   b. Willfully pressured her into returning to work before her leave expired; and
   c. Willfully denied FMLA-approved leave.

149. As a result of Defendants' repeated willful interference with Plaintiff's FMLA rights, Plaintiff has sustained damages.

## **PRAYER FOR RELIEF FOR ALL CLAIMS**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following injunctive, equitable and monetary relief to the extent permissible under applicable law:

   a. An order compelling the Defendants to effectively and efficiently institute, carry-out, and enforce policies, practices and programs which eradicate Defendants' past and present effects of unlawful employment practices.
   b. A permanent injunction ordering and enjoining Defendants, their commissioners, officers, managers, agents, employees, successors, assigns, and any and all persons in active concert and participation with it, from engaging in any and all employment practices which discriminate or appear to discriminate against Plaintiff because of her sex, or appear to be retaliatory towards Plaintiff because of their participation in legally protected activities.
   c. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* 42 U.S.C. § 1983, and the Illinois Human Rights Act, 775 ILCS 5/2-102(D).
   d. An order compelling the Defendants to make Plaintiff whole by providing her with compensation for any non-pecuniary losses, including damages for pain, humiliation, and suffering where appropriate.
   e. An order awarding Plaintiff economic, including compensatory, damages against the Defendants where appropriate.

    f.   An order awarding Plaintiff punitive and/or liquidated damages where appropriate.

    g.   An order against the Defendants awarding Plaintiff for any and all litigation expenses and costs, including any and all reasonable attorney's fees, as provided for in 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988(b), and 775 ILCS 5/10-102(C).

    h.   An order awarding Plaintiff pre-judgment and post-judgment interest.

    i.   Any and all other relief this Honorable Court deems just, equitable, and necessary to make Plaintiff whole.

## JURY DEMAND

Plaintiff demands trial by jury on all claims and issues that may be tried to a jury.

Dated: March 14, 2019                Respectfully submitted,

**Melissa Perez**

By : /s/ Amy S. Cramer
/s/ Thomas M. Cramer
Amy S. Cramer (ARDC No. 6308140)
acramer@cramerlawchicago.com
Thomas M. Cramer (ARDC No. 6322468)
tcramer@cramerlawchicago.com
Cramer Law Chicago, P.C.
180 N. LaSalle Street
Suite 3700
Chicago, Illinois 60601
312-924-0219