# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| Melissa Perez, | |
| Plaintiff, | Case No. 19-cv-1788 |
| v. | Judge John Robert Blakey |
| COOK COUNTY SHERIFF'S OFFICE; COUNTY OF COOK, a unit of local Government; TOM DART, in his individual capacity as Sheriff of Cook County, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Melissa Perez alleges her supervisor repeatedly harassed her when she served as a correctional officer at Remote Booking. She brings this employment suit against the Cook County Sheriff's Office, Cook County, and the Sheriff of Cook County, Tom Dart, in his individual capacity alleging: (1) sexual harassment – hostile work environment under Title VII and the Illinois Human Rights Act (IHRA); (2) sexual harassment – quid pro quo under Title VII and the IHRA; (3) gender discrimination (disparate treatment) under Title VII and the IHRA; (4) gender discrimination (pattern or practice) under Title VII; (5) retaliation under Title VII, the IHRA, and the Family and Medical Leave Act (FMLA); (6) FMLA interference; and (7) violation

1

of her Fourteenth Amendment Due Process rights under § 1983.  Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  [16].

For the reasons explained below, this Court grants in part and denies in part Defendants' motion.

## I.     Background

### A.     Remote Booking

Since 2005, Plaintiff Melissa Perez has been an employee of the Cook County Sheriff's Office where she works as a correctional officer.  [1] ¶ 4.  In 2014, after nearly a decade working at Cook County Jail (Jail), she was transferred to Remote Booking. *Id*. ¶¶ 12–13.  This is where her troubles began.

At Remote Booking, she was immediately supervised by Lieutenant Charles Luna.  *Id*. ¶ 15.  According to the Complaint, all was well until February 2016 when Plaintiff's husband was diagnosed with a rare form of cancer.  *Id*. ¶ 16.  In order to care for her husband, Plaintiff applied for and was approved for intermittent FMLA leave.  *Id*. ¶ 18.  Upon learning of this leave, Lt. Luna allegedly called Plaintiff to inform her that she could not use FMLA leave while she worked at Remote Booking. *Id*. ¶ 19.  Around this time, Lt. Luna also allegedly began making sexually explicit comments to Plaintiff.  *Id*. ¶ 23.  Lt. Luna allegedly insinuated that Plaintiff could have sex with him while her husband was sick and unable to engage in sexual activity.  *Id*. ¶¶ 24–30 (informing Plaintiff that her husband was "not going to be able to get it up so if you need help, I could help you out").  From this point on, Plaintiff

alleges Lt. Luna engaged in repeated interference with her ability to take FMLA leave and repeated unwanted sexual advances. *Id.* ¶¶ 31–87.

### B. FMLA Leave

As it relates to impeding Plaintiff's ability to use her FMLA leave, Plaintiff alleges that Lt. Luna frequently told her she could not take FMLA leave and was slow or unresponsive when tasked with approving her leave. *Id.* ¶¶ 19–22, 34–41, 45–51, 75–81. Lt. Luna allegedly once told Plaintiff that he would not approve her FMLA leave and that she needed to show up at work "or else." *Id.* ¶ 37.]. Additionally, Plaintiff alleges he declined to offer her a position that had recently opened at 111th St. because she took FMLA leave and "chose [her] family over [her] job." *Id.* ¶ 44. Plaintiff wanted this position because it was close to her home. *Id.* ¶ 32. She also thought she was likely to be offered the position because of her seniority within her group and because Lt. Luna told her he would offer it to her when it opened. *Id.* ¶ 33.

### C. Sexual Harassment

As for Lt. Luna's sexual advances, Plaintiff alleges several more instances where Lt. Luna made sexual comments. For example, in 2017, Plaintiff took short-term disability leave because of her own health issues. *Id.* ¶¶ 52–53, 67. During this time, Lt. Luna inquired as to when Plaintiff would return. *Id.* ¶¶ 54, 61. Plaintiff said she did not know because she was still suffering neck pain from a ruptured disc, *id.* ¶ 55, to which Lt. Luna responded: "I'm going to have to take it easy on your neck. Are you still going to be able to take it deep?," *id.* ¶ 57.

Plaintiff alleges that on another occasion, Plaintiff informed Lt. Luna that her return was going to be delayed because she underwent a hysterectomy, and Lt. Luna responded: "Oh, something new to break in." *Id*. ¶ 61–66. Plaintiff also alleges that once she returned to work, she discussed whether Lt. Luna would permit her to change shifts. *Id*. ¶¶ 69–71. In response to Plaintiff telling Lt. Luna that he should not "pull [her] leg" regarding whether he would approve her for a particular shift, Lt. Luna said: "I've got something for you to pull." *Id*. ¶¶ 70–71. Plaintiff interpreted these comments as Lt. Luna making sexual advances. *Id*. ¶¶ 58, 65, 72.

### D.   Negative Employment Consequences

When Plaintiff returned to work, she alleges she suffered several negative employment consequences. Her desirable 7:00 am to 3:00 pm shift was given to her male partner who had less seniority. *Id*. ¶ 68. Plaintiff also alleges that when Lt. Luna learned that Plaintiff complained about him to Superintendent Queen, Lt. Luna "scream[ed]" at her, stopping only when she told him she was going to make a complaint against him, at which point he "immediately changed his tone." *Id*. ¶¶ 75–78. Finally, shortly after Plaintiff took a day of FMLA leave and requested another day the following month, *id*. ¶ 80, Lt. Luna transferred her back to Jail. *Id*. ¶ 81. Plaintiff alleges that working at Jail is less desirable than Remote Booking because sheriffs are at a greater risk of violence, which is why senior sheriffs typically fill the remote-booking positions. *Id*. ¶ 82–84. Plaintiff views her transfer as retaliation for her use of FMLA leave and rejecting Lt. Luna's sexual advances. *Id*. ¶ 85.

Based upon these allegations, Plaintiff now sues her employer the Cook County Sheriff's Office as well as Cook County, and the Cook County Sheriff, Tom Dart, in his individual capacity.

## II.    Legal Standard

Defendants seek to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

To analyze a motion to dismiss, this Court must construe the Complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. On a motion to dismiss, this Court is limited to considering the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III. Analysis

#### A. Exhaustion under the Illinois Human Rights Act

Plaintiff asserts a variety of claims under the IHRA. [1], Counts II, IV, VI, and IX. Yet to access the federal courts to adjudicate an IHRA claim, plaintiffs must first exhaust the administrative remedies under the Act and possess a final order from the Illinois Human Rights Commission. *Davis v. Metro. Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *9 (N.D. Ill. July 3, 2012) ("[Federal] [c]ourts do not have statutory authority to hear cases for alleged violations of the Act. Only final orders issued by the Illinois Human Rights Commission are subject to appellate review, and this is the limited extent to which the judiciary participates in enforcement of the Act.") (internal citations omitted). Defendants argue that Plaintiff failed to exhaust her administrative remedies, so her IHRA claims must be dismissed. [16] at 7. Plaintiff counters that she filed a complaint with the EEOC, which is sufficient to exhaust her IHRA administrative remedies because the EEOC has a workshare agreement with the Illinois Department of Human Rights. [18] at 9–11.

Plaintiff's argument is unconvincing. Courts are clear that regardless of the workshare agreement, "a right to sue letter from the EEOC cannot be used as a substitute for a final order from the Commission." *Davis*, 2012 WL 2576356, at *9; *Peters v. Fansteel, Inc.*, 736 F. Supp. 198, 201 (N.D. Ill. 1990) (dismissing a plaintiff's claims under the IHRA despite the fact that the plaintiff had filed a claim with the EEOC because the plaintiff "has not alleged exhaustion of the administrative remedies provided under the [IHRA], and therefore plaintiff's complaint does not

state a cause of action under the [IHRA]"). Because Plaintiff fails to allege she exhausted her remedies under the IHRA, this Court grants without prejudice Defendants' motion to dismiss Counts II, IV, VI, and IX.

B.    Defendant Cook County

Defendants next seek dismissal of any substantive claims against Cook County because the County has no employment relationship with the Cook County Sheriff's Office as necessary for it to be liable for the Sheriff's Office's actions. [16] at 6; *see also Young v. Cook Cty. Sheriff Tom Dart*, Case No. 14-cv-06350, 2015 WL 8536734, at *2 (N.D. Ill. Dec. 10, 2015) (dismissing substantive claims against Cook County because the County is separate from the Sheriff's Office and cannot be liable for its misconduct). Plaintiff, though, states that the "County of Cook is a Defendant in this matter solely in its capacity as an indemnitor for any claims brought against the Cook County Sheriff's Office." [1] ¶ 8. Thus, for clarification, to the extent Plaintiff alleges any substantive claims against the County, this Court grants Defendants' motion to dismiss with prejudice. The County, however, must remain a defendant in its capacity as indemnitor. *Young*, 2015 WL 8536734, at *2 n. 1 (citing *Carver v. Sheriff of LaSalle Cty*, 324 F.3d 947, 948 (7th Cir. 2003).

C.    Defendant Sheriff Tom Dart

Plaintiff also sues Cook County Sheriff Tom Dart, in his individual capacity, alleging that he had "final policy making authority" over the alleged conduct. [1] ¶ 9. Yet Title VII only provides a remedy against "employers" rather than individual supervisors. 42 U.S.C. § 2000e; 42 U.S.C. § 2000e-2. Similarly, the FMLA only

imposes liability on employers. 29 U.S.C. § 2615(a). Thus, the question is whether Sheriff Dart in his individual capacity can be considered Plaintiff's "employer" in order to hold him liable. The Seventh Circuit answered this question in the negative holding that individual supervisors are not employers under Title VII. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *see also Haltek v. Vill. of Park Forest*, 864 F. Supp. 802, 805 (N.D. Ill. 1994) ("The notion that a supervisor [is] liable as an employer's agent is really a surrogate for the employer and thus only liable in his official capacity is further supported by Title VII's statutory scheme."). Because these statutes provide no avenue to hold Defendant Sheriff Tom Dart liable in his individual capacity, this Court grants with prejudice Defendants' motion to dismiss all claims against him.[1]

### D. Title VII Allegations

#### 1. *Statute of Limitations*

Title VII prohibits employers from discriminating against employees based upon an individual's gender. 42 U.S.C. § 2000e–2(a). Obviously, sexual harassment is a form of sex discrimination. *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1070 (C.D. Ill. 1998). Plaintiff alleges that Lt. Luna's actions constituted sex discrimination under Title VII. [1] ¶¶ 85–86.

To support her Title VII claims, Plaintiff offers a series of individual incidents stemming from her husband's cancer diagnosis in February 2016 until her transferred to Jail on April 27, 2018. [1] ¶¶ 10–87; [18] at 4–9. Defendants, on the

---

[1] This Court also dismisses Plaintiff's § 1983 claims against Sheriff Dart as explained later in this opinion.

other hand, seek to limit the relevant conduct to those incidents that occurred after October 11, 2017, claiming the previous events are untimely and cannot be considered as part of her claims. [16] at 7.

As relevant here, for a plaintiff to assert a timely claim, "a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice." *Doe 1 v. City of Chicago*, 335 F. Supp. 3d 1098, 1101 (N.D. Ill. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff filed her EEOC complaint on August 7, 2018, [1] (Ex. 1), meaning only those incidents that occurred on or after October 11, 2017 are within that 300-day period. This excludes Lt. Luna's conduct prior to Plaintiff taking short-term disability leave. [16] at 7. Yet Plaintiff urges this Court to consider the pre-October 11 conduct under the continuing-violation doctrine. [18] at 4–9. The "continuing violation doctrine allows a plaintiff to get relief for time-barred acts by linking them with acts within the limitations period." *Doe 1*, 335 F. Supp. 3d at 1101 (quoting *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001)).

At this stage of the proceedings, this Court finds the continuing violation doctrine applicable to the Plaintiff's allegations. Plaintiff alleges that Lt. Luna engaged in a repeated pattern of egregious conduct. [1] ¶¶ 10–87. The only possible "break" in Plaintiff's allegations is when she was on short-term disability leave. *Id.* ¶¶ 52–67. Yet that ostensible lull in misconduct arose from a lack of access rather than any change in conduct. Moreover, even while away from work, Plaintiff alleges that Lt. Luna contacted her and made inappropriate comments. *Id.* at ¶¶ 52–66.

Additionally, in the harassment context, an individual incident may not in itself rise to an actionable claim, but when the behavior is looked at together, rather than in isolation, the "entire series is actionable." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). Here, Plaintiff plausibly alleges claims that involve sexual innuendos and increasing hostility, which support an inference that these incidents only appeared actionable when she looked at them in context. Accordingly, Plaintiff may properly rely upon the continuous incidents she alleged that occurred before October 11, 2017. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1032 (7th Cir. 2003).

### 2.  Hostile Work Environment

Defendants next ask this Court to dismiss Counts I and III,[2] which allege Defendants created a hostile work environment. [16] at 7–9. Under Title VII, an employer violates the statute if an employee is subjected to a hostile work environment based upon the employee's sex. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016) (noting the prohibition on discrimination "encompasses the 'creation of a hostile work environment' that is severe or pervasive enough to affect the terms and conditions of employment"); *see also Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 65 (1986) ("Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.").

---

[2] Count III alleges quid pro quo harassment under Title VII. [1] ¶¶ 98–104. Generally, however, the courts have abandoned the quid pro quo analysis, instead considering whether the plaintiff suffered a tangible employment action. *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1141–42 (7th Cir. 2001); *Doe 1*, 335 F. Supp. 3d at 1101 n.1. For this reason, this Court considers Plaintiff's quid pro quo harassment claim with Plaintiff's hostile work environment claim. *See Doe 1*, 250 F.3d at 1100–1103.

To state a hostile work environment claim, Plaintiff must allege: (1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's sex caused the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability. *Id.*

Here, Defendants only challenge the sufficiency of Plaintiff's allegations that Lt. Luna's conduct remained sufficiently severe and pervasive. [16] at 7–9. Determining whether the alleged conduct satisfies the severe and pervasive threshold requires courts to look at the totality of the circumstances. *Equal Emp't Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993)). There is no precise test. *Id.*

Consistent with their timeliness arguments, Defendants attempt to limit the relevant actions creating the work environment to those following Plaintiff's return to work from her short-term leave. *Id.* But as explained above, all of Plaintiff's allegations remain relevant in considering her workplace environment. Additionally, Defendants mistakenly limit the scope of the inquiry to conduct that was sexual in nature. *Id.* But the Seventh Circuit has instead instructed courts to consider all alleged harassment and intimidating conduct based upon the plaintiff's sex (gender), not just comments that are themselves sexual in nature. *Passananti v. Cook Cty.*, 689 F.3d 655, 664 (7th Cir. 2012); *Doe 1*, 335 F. Supp. 3d at 1103 (noting the incidents of harassment "encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment") (quoting *Hildebrandt*, 347 F.3d at 1033).

Looking at the totality of the allegations, Plaintiff successfully states a claim at this stage in the case. She alleges that in the span of a little over two years, Lt. Luna misconduct included that he:

- Twice told her she could not use her FMLA leave while working at Remote Booking
- Twice told her that he would engage in sexual activity with her while her husband was sick and enable to have sexual intercourse
- Refused to submit her for a position at the 111th St. Remote Booking location because she "chose [her] family over [her] job and called in FMLA" despite previously offering to do so and despite Plaintiff's seniority
- Did not respond to her pink slip for time off to care for her husband and told her to show up at work "or else"
- Did not respond to Plaintiff's text message informing him that she was using her FMLA leave
- Asked if she was "still going to be able to take it deep?" when Plaintiff told him she ruptured a neck disc
- Stated her hysterectomy surgery provided him "something new to break in"
- Gave her desirable 7:00 am to 3:00 pm shift to her male partner with less seniority
- Told Plaintiff, "I've got something for you to pull on"
- Failed to respond to Plaintiff's request to switch shifts with her partner on November 2 and 3, 2017
- Screamed at Plaintiff for complaining about his behavior
- Transferred Plaintiff back to Jail within ten days of her taking a day of FMLA leave and requesting another

Moreover, during that two-year period, Plaintiff also alleges she:

- Told Union Chief Steward Mark Robinson that her FMLA leave was not approved and that "she feared for her job if she disobeyed Lt. Luna," to which Mr. Robinson told her to "politely text Lt. Luna" and tell him she was taking FMLA leave
- Told Superintendent Giunta about her hardships, to which Sup. Giunta only offered that she return to Jail
- Emailed Sup. Queen about her issues, who told Plaintiff to call, but then transferred her back to Lt. Luna

[1] ¶¶ 10–87.

These allegations show a mixture of "severe episodes," such as unwanted sexual advances, and relentless patterns of "lesser harassment," such as Lt. Luna's consistent unresponsiveness and discouragement of Plaintiff using FMLA leave. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (quoting *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 951 (7th Cir. 2005)). Additionally, the contemporaneous relationship between Lt. Luna's alleged sexual advances and his other harassing workplace behavior suggests these incidents may be part of a larger effort to harass Plaintiff based upon her sex. *Alamo*, 864 F.3d at 550. Furthermore, Plaintiff alleges that she made several attempts to tell superiors that she was bothered by Lt. Luna's conduct, none of whom meaningfully attempted to better Plaintiff's working conditions. *Id.* at ¶¶ 38–40, 46–49, 75–76; *Alamo*, 864 F.3d at 550 (fact that plaintiff informed unresponsive supervisors remained part of the severe and pervasive analysis). Taken in the light most favorable to Plaintiff, these allegations plausibly create an inference that Plaintiff was subjected to a severe and pervasively hostile work environment based upon her sex. Therefore, this Court denies Defendants' motion to dismiss Counts I and III.

### 3. *Adverse Employment Action*

Defendants contend that Counts V (Disparate Treatment) and VIII (Retaliation) should be dismissed because Plaintiff failed to plead an adverse employment action, [16] at 10–11, an element of both claims, *Stone v. Bd. of Tr. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 944 (N.D. Ill. 2014). Defendants' argument is twofold: (1) Plaintiff failed to show that she endured an adverse employment action; and (2)

even if she did suffer an adverse employment action, it failed to arise from her protected status or protected activity. [16] at 10–11.

Turning to Defendants' first argument, an "adverse employment act is some act by the employer which causes a 'qualitative change in the terms or conditions of the employee's conditions of employment or some sort of real harm.'" *Stone*, 38 F. Supp. 3d at 944 (internal punctuation omitted) (quoting *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014)). Here, Plaintiff alleges that she was not offered the 111th St. position even though Lt. Luna promised her the position and she had seniority to obtain it. [1] ¶¶ 31–33, 42–44. Additionally, she alleges Lt. Luna repeatedly created roadblocks to her ability to take FMLA leave. *Id*. ¶¶ 19–21, 35–51, 79. Finally, she alleges that she was transferred to Jail, which correctional officers view as objectively less desirable than Remote Bookings. *Id*. ¶¶ 81–84. These acts considered together might plausibly constitute qualitative changes in the terms or conditions of Plaintiff's job or as harm. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (explaining that what constitutes an adverse employment action is broadly defined in this circuit). Thus, Plaintiff has sufficiently alleged adverse employment actions.

As to Defendants' second argument, Plaintiff alleges she suffered these adverse employment actions because of her sex. [1] ¶ 85. Thus, Plaintiff has sufficiently plead an adverse employment reaction for her Title VII claims, *Stone*, 38 F. Supp. 3d at 944 (alleging a conclusory link between a protected status and an adverse employment action is sufficient at the pleading stage), and this Court denies Defendants' motion to dismiss Counts V and VIII.

4. *Pattern or Practice*

Plaintiff alleges that Defendants also violated Title VII by engaging in a pattern or practice that resulted in differential treatment of female employees. [1] ¶¶ 112–14; ¶¶ 123–125.[3] Plaintiff also brings a disparate treatment claim. *Id.* ¶¶ 106–10. This Court will consider these claims together per the Seven Circuit's instruction that pattern or practice claims should typically be considered claims for disparate treatment. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716–17 (7th Cir. 2012). Defendants challenge the sufficiency of Plaintiff's allegations. [16] at 11–12.

To state a pattern or practice claim, Plaintiff must show that Defendants regularly discriminated against employees such that the sex discrimination could fairly be characterized as Defendants' "standard operating procedure." *Puffer*, 675 F.3d at 716 (7th Cir. 2012). In order to accomplish this, plaintiffs typically must establish a prima facie case by presenting statistical evidence that creates an inference of groupwide discrimination. *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 339 (1977); *E.E.O.C. v. Chi. Miniature Lamp Works*, 947 F.2d 292, 297 (7th Cir. 1991). Because pattern or practice claims by their nature involve questions about the defendant's treatment of different groups of employees, courts regularly observe that these claims are best brought as class actions rather than individual claims. *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 n.6 (7th Cir. 1985).

---

[3] Unintentionally, Plaintiff appears to allege the same pattern and practice claim twice. *See* [1], Counts VII and X.

Given the ill fit between Plaintiff's claims and the typical disparate treatment case, it is unsurprising that she fails to state a claim here. Plaintiff alleges a generalized list of wrongs Defendants supposedly commits against female employees, [1] ¶¶107, 113, 124, but she fails to include any allegations that would support a plausible inference that Defendants engaged in any discriminatory activity as their standard operating procedure. For this reason, this Court grants without prejudice Defendants' motion to dismiss Counts V, VII, and X.

D.  *Monell* Claim

Plaintiff alleges a § 1983 claim for violation of her Fourteenth Amendment equal protection rights. *Id.* ¶¶ 126–134. Defendants move to dismiss this claim arguing that Plaintiff failed to sufficiently allege a basis to hold them liable for any constitutional deprivation Lt. Luna may have caused. [16] at 12–14.

Section 1983 cannot be used to impose liability on Defendants based upon a *respondeat superior* theory. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For a governmental unit to be liable for an employee's actions, the plaintiff must show that the conduct leading to the deprivation took place pursuant to an official policy or practice. *Hall v. City of Chicago*, 989 F. Supp. 2d 699, 707 (N.D. Ill. 2013) (citing *Monell*, 436 U.S. at 690). The policy need not be officially authorized, so long as it is so widespread and settled that it is tantamount to an authorized policy. *Id.* Plaintiff alleges that Defendants utilized widespread policies that encouraged sex discrimination, retaliation, and violations of employees' equal protection rights. [1] ¶¶ 130, 133.

Even at the pleading stage, however, Plaintiff still needs to "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Plaintiff's complaint fails to meet this requirement. In her complaint, she states that Defendants utilize widespread policies such as: "[d]irectly encourage[ing], and fail[ing] to adequately discipline, supervise and control [their] officers," and "failing to adequately punish and discipline prior instances of similar misconduct." [1] ¶ 133. But she does not include any factual allegations in the Complaint to create reasonable inference that these practices exist or constitute a governmental custom. For example, she does not allege any similar instances in the Cook County Sheriff's Office where the same conduct occurred. *Gill*, 850 F.3d at 344 (dismissing a § 1983 claim when the plaintiff failed to allege other examples of similar conduct to establish a widespread practice). Therefore, Plaintiff's *Monell* claim fails, and this Court grants Defendants' motion to dismiss Count XI without prejudice.

E.     FMLA Claims

1.     *Retaliation*

Defendants also argue that Plaintiff failed to state a retaliation claim under the FMLA. [16] at 10–11. Congress enacted the FMLA to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b). The FMLA accomplishes this balance by entitling employees to take a certain amount of medical leave per year, 29 U.S.C. § 2612. The FMLA also prohibits employers from using the fact that an employee took FMLA leave as a negative factor in employment decisions.

*Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012). To state a claim for FMLA retaliation, a plaintiff must ultimately show: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse employment action. *Id.* at 631. Here, Defendants argue that Plaintiff failed to allege an adverse employment action. [16] at 10–11. Yet, as explained before, Plaintiff plausibly alleged she suffered several adverse employment actions and that Lt. Luna's actions resulted from her engaging in a protected activity, i.e. requesting and using her FMLA leave. [1] ¶ 85; *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014) (requesting FMLA leave is a protected activity under the Act). Thus, Plaintiff has sufficiently pled an adverse employment reaction for her FMLA claims, and this Court denies Defendants' motion to dismiss Count XII.

## 2. *FMLA Interference Claim*

Finally, Defendants claim that Plaintiff's FMLA interference claim should be dismissed because she was not denied FMLA leave. [16] at 14–15. To state a claim for FMLA interference, Plaintiff must allege that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To support her claim, Plaintiff asserts in conclusory fashion that her superiors "denied her FMLA-approved leave both verbally and via email." [1] ¶ 146. But this barebones allegation remains insufficient.

*McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (noting that "conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth"). Instead looking at the Complaint's factual allegations, Plaintiff alleges Lt. Luna repeatedly engaged in inappropriate behavior in attempting to discourage her from using her FMLA leave, [1] ¶¶ 19–22, 34–41, 45–51, 75–81, but she does not include any factual allegations that she was prevented from taking FMLA leave, *see id*. Indeed, she took FMLA leave on multiple occasions. *Id*. For this reason, this Court grants without prejudice Defendants' motion dismiss Count XI.

## IV. Conclusion

Defendants' motion to dismiss, [16], is granted in part and denied in part. This Court grants Defendants' motion to dismiss Plaintiff's IHRA claims. This Court also grants Defendants' motion to dismiss Plaintiff's claims against Sheriff Tom Dart and Plaintiffs' substantive claims against Defendant County of Cook. This Court further grants Defendants' motion to dismiss Plaintiff's pattern or practice and disparate treatment claims under Title VII. This Court also grants Defendants' motion to dismiss Plaintiff's Section 1983 claim. Finally, this Court grants Defendants' motion to dismiss Plaintiff's claim for FMLA interference. This Court denies the remainder of Defendants' motion to dismiss.

This Court sets a case management conference for Wednesday, March 11, 2020 at 10:15 a.m. in Courtroom 1203, at which point the parties shall be prepared to set all case management dates.

Dated: February 18, 2020.

John Robert Blakey
United States District Judge